# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CR-50-TLS |
| | ) | |
| PHILLIP BIDDLE | ) | |

## OPINION AND ORDER

The Defendant, Phillip Biddle, pleaded guilty to one count of possession of materials depicting minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). He is awaiting sentencing. This matter is before the Court on the Defendant's request for a sentence below the applicable advisory Sentencing Guidelines range based on the statutory factors provided for such variances in 18 U.S.C. § 3553(a). On August 25, 2014, the Defendant filed a Sealed Sentencing Memorandum [ECF No. 39] arguing that the guideline sentence is greater than necessary to comply with the purposes of punishment under § 3553(a). The Government filed a Sealed Sentencing Memorandum [ECF No. 42] arguing that the advisory guideline range is reasonable and that the government leaves the appropriate sentence to be imposed upon the consideration of § 3553(a) facts to the sound discretion of the Court. This Opinion and Order addresses the parties' arguments regarding the appropriate sentence pursuant to § 3553(a) as well as the Defendant's outstanding objections to the Presentence Investigation Report (PSR), as noted in the addendum to the PSR [ECF No. 45], filed on August 29, 2014. For the reasons provided below the Court will sentence the Defendant to a term of imprisonment of 54 months.

**BACKGROUND**

The Defendant pleaded guilty to possession of approximately 23 still images and 81 videos of child pornography. In December 2011, the Federal Bureau of Investigation (FBI) investigated communications involving the Defendant that included the transmission of child pornography. In June 2012, law enforcement executed a search warrant of the Defendant's residence and recovered a HP computer tower, a Compaq mini-pic C120, and 199 CDs/DVDs. The FBI found approximately 23 still images and 81 videos of child pornography on nearly all of the media recovered from the residence. An FBI review of the images indicated that the images included depictions of sadomasochism and of prepubescent minors or minors under the age of 12.

On April 24, 2014, the Defendant and the Government entered a written Plea Agreement in which the Defendant pleaded guilty to the Indictment in return for the Government's recommendations that he receive a reduction for acceptance of responsibility and a sentence equal to the minimum of the applicable guideline range. On May 15, 2014, the Court conducted a change of plea hearing and accepted the Defendant's plea of guilty to the Indictment. The Court referred the matter to Probation and Pretrial Services for the preparation of a presentence investigation report (PSR).

The PSR sets a base offense level of 18 under U.S.S.G. § 2G2.2(a). It applies an enhancement of two levels because the offense involved depictions of prepubescent minors who had not attained the age of 12 years, § 2G2.2(b)(2); an enhancement of two levels because the material was distributed by the Defendant, § 2G2.2(b)(3)(F); an enhancement of four levels because the offense involved material portraying sadistic conduct or other depictions of violence,

§ 2G2.2(b)(4); an enhancement of two levels for use of a computer, § 2G2.2(b)(6); and an enhancement of five levels based on the number of images possessed, § 2G2.2(b)(7)(D). The PSR recommended a three-level reduction for acceptance of responsibility under § 3E1.1(a) and (b) because the Defendant entered a timely guilty plea. This yielded a total offense level of 30. Coupled with the Defendant's criminal history category of II, the advisory guideline range of imprisonment is reported in the PSR as 108 to 120 months.[1]

The Defendant is a 37-year-old male with a limited criminal history, including convictions for domestic battery, impersonation of a public servant, and criminal recklessness. The Defendant objects to the inclusion of the victim statements in the PSR, to the enhancements applied under the specific offense characteristics in the PSR, and to the probation officer's conclusion in the PSR that he did not identify any factors that would warrant a departure from the applicable sentencing guideline range. The Defendant also argues that the advisory guideline range results in a sentence that is greater than necessary to comply with the purposes of punishment. The Defendant asks for a sentence of 15 months of imprisonment based on the history and characteristics of the Defendant, including various health issues and past experiences of the Defendant, and the nature and characteristics of the offense, as argued in the Defendant's Sealed Sentencing Memorandum.

---

[1] Although the PSR states the high end of the guideline range is 120 months, the Court notes that this offense involved a visual depiction of a prepubescent minor or a minor who had not attained 12 years of age. Pursuant to 18 U.S.C. § 2252(b)(2), the statutory maximum for § 2252(a)(4) offenses is 10 years unless the offense involved visual depiction of a prepubescent minor or a minor who had not attained 12 years of age, in which case the statutory maximum is 20 years. Thus, the Court finds that the statutory maximum of 10 years, or 120 months, is inapplicable in this case, and that the advisory guideline range should be 108 to 135 months.

## ANALYSIS

A. **Defendant's Objections to PSR**

The Defendant's first objection concerns the inclusion of the victim letters in the PSR. He argues that the disclaimers included in these letters indicate that it cannot be determined if any of the victims who wrote the letters are actually depicted in the images that were found on his computer. The Defendant argues that the letters should not be included because they came from victims that may not be relevant to this case and, therefore, serve no purpose as to the child pornography found on his computer.

In response, the Government argues that the Defendant possessed images of child pornography from several identified series and that the Government possesses victim impact statements from three series, identified as Series 1, Series 2, and Series 3. The Government advises that it was able to identify three individuals (Victim 1, Victim 2, and Victim 3) from Series 1, a multiple victim series, as well as the victims from Series 2 and Series 3, both single victim series, from the videos in the Defendant's possession.

Upon review of the record, the Court finds that the victim impact statements attached to the PSR are proper because the Government, with the assistance of the FBI, was able to identify the victims contained in Series 1, 2, and 3 in the videos found to be in the Defendant's possession. As such, the Defendant's first objection is overruled.

The Defendant makes the following objections to the enhancements contained in the PSR for the specific offense characteristics: (1) that the two-level enhancement for use of a computer is inappropriate and a poor gauge of relative fault between offenders because nearly every child pornography case involves use of a computer and the Internet; (2) that the five-level

4

enhancement because the offense involved 600 or more images is inappropriate because the unfortunate ease with which large numbers of images can be accessed and stored does not provide a distinction between large-scale and small-scale child pornography purveyors; (3) that the two-level enhancement for material involving a prepubescent minor, or a minor under the age of twelve, is inappropriate because the very nature of child pornography involves children and such an enhancement is a poor gauge of the relative level of fault between offenders; (4) that the two-level enhancement for distribution other than distribution described in subdivision (A) through (E) pursuant to U.S.S.G. §2G2.2(b)(3)(F) is inappropriate because the nature of peer-to-peer file sharing programs, with automatic reciprocal sharing, causes mere possession to evolve into unintended distribution; and (5) that the four-level enhancement for possession of material portraying sadistic or masochistic conduct is inappropriate because it is not a valid indicator of culpability, could be applied in most cases, and that, at most, the Defendant only possessed one image that may have been categorized as sadomasochism. The Defendant contends that the enhancements do not accurately reflect the Defendant's culpability for the offense and are a poor gauge by which to make a distinction between the relative level of fault between offenders.

In response, the Government argues that the advisory guideline range is reasonable, that there are no factual disputes as to the enhancements in the PSR, and that the Defendant's arguments that a guideline sentence would be greater than necessary to comply with the purposes of punishment is a consideration under 18 U.S.C. § 3553(a) and not the sentencing guidelines.

The Court finds that the Defendant's objections to the enhancements are more properly made as arguments under the § 3553(a) sentencing factors rather than by objection to the calculation of the sentencing guidelines in the PSR. Indeed, the Defendant's Sealed Sentencing

5

Memorandum makes those arguments. Applicability of the enhancements in formulating the offense level for the sentencing guideline calculation is based on the facts of the case. It is then within the Court's discretion to deviate from the sentencing guidelines, based on § 3553(a) factors, if appropriate in fashioning a sentence for the Defendant. The Defendant does not challenge the underlying facts of the offense by which the enhancements have been applied to the offense level computation for the sentencing guidelines. He instead argues that the result of such an application produces a guideline sentence that is greater than necessary. This argument is well-made as a § 3553(a) argument for the appropriate sentence, but not as an objection to the PSR. As such, the Defendant's objections are overruled.

The Defendant's final objection to the PSR is that he believes he should receive a two-level variance due to his health issues, as raised in his Sealed Sentencing Memorandum. Pursuant to U.S.S.G. §5k2.22(2), a variance may be made for extraordinary physical impairments where the Defendant's physical condition or appearance is present to an unusual degree and distinguishes his case from typical cases covered by the guidelines. The Government argues that the Defendant does not fit within this provision. Although the Government acknowledges the Defendant's conditions, the Government argues that these characteristics have not prevented the Defendant from doing all the other things, legal and illegal, that other people without those conditions can do and that his conditions cannot now be used to mitigate the punishment for his actions.

The Court notes that this objection concerns the paragraph in the PSR regarding whether the probation officer has identified any factors that would warrant a variance from the sentencing guidelines. As such, the Defendant's arguments that factors supporting a variance do exist are

proper under § 3553(a), but not as an objection to the guideline calculations. Therefore, the Defendant's final objection is overruled, but the Court will consider those arguments pursuant to § 3553(a).

**B.	§ 3553(a) Factors**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) (same). Here, the primary issue involves the second step, the application of the criteria set forth in § 3553(a) to the facts and circumstances of the Defendant's particular case. In imposing a sentence, § 3553(a) requires a court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the following purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson*, 555 U.S. at 352; *Rita v. United States*, 551 U.S. 338, 351 (2007). When evaluating the Guidelines recommendation, a court may consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline, *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and the court may reject any guideline on policy grounds, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010). Ultimately, a court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

The Defendant argues that the enhancements applied in his case (the computer enhancement, the number of images enhancement, the enhancement for images of prepubescent

minors, the enhancement for distribution other than distribution described in subdivisions (A) through (E) pursuant to U.S.S.G. §2G2.2(b)(3)(F), and the enhancement for sadistic or masochistic images) should not be considered because they would apply in nearly every case and, as such, are a poor indicator of the relative level of fault between offenders. The Government argues that the advisory guidelines, including the enhancements, are reasonable, and that the Defendant's arguments that a guideline sentence with the enhancements would make the sentence greater than necessary to comply with the purposes of sentencing are within the sound discretion of the Court under consideration of the § 3553(a) factors.

      The Defendant has pleaded guilty to possession of materials depicting minors engaging in sexually explicit conduct, a violation of 18 U.S.C. § 2252(a)(4)(B). Therefore, the Defendant is not subject to the traditional mandatory minimum of five years of imprisonment associated with child pornography convictions. *Cf.* 18 U.S.C. §§ 2252(a)(1)–(3) and (b). Rather, § 2252(a)(4) has no statutory minimum term of imprisonment and a maximum term of imprisonment of twenty years when the offense involves a visual depiction of a prepubescent minor or a minor who has not attained twelve years of age. *See* § 2252(b)(2). With a total offense level of 30 and a criminal history category of II, the Defendant's guideline sentencing range is 108–135 months of imprisonment and supervised release of 5 years to life. The Court is aware that the Commission and many other individuals and groups scrutinizing federal sentencing have suggested a need to reassess the Guidelines with respect to child exploitation crimes and consider reforms. In December 2012, the Commission submitted a report to Congress in which the Commission examined and critiqued federal sentencing policy in child pornography cases. United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (2012),

available at www.ussc.gov/ Legislative_ and_ Public_ Affairs/Congressional_ Testimony_ and_ Reports/ Sex_ Offense_ Topics/ 201212_ Federal_ Child_ Pornography_ Offenses/index.cfm. The Report focused primarily on non-production related offenses under U.S.S.G. § 2G2.2 and expanded on the Commission's 2009 report, *The History of the Child Pornography Guidelines*. Based on its extensive research, the Commission concluded that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior." *Report to Congress: Federal Child Pornography Offenses* at 321. Significantly, the Department of Justice agreed with the Commission's general conclusions:

> [T]he Department agrees with the Commission's conclusion that advancements in technologies and the evolution of the child pornography "market" have led to a significantly changed landscape—one that is no longer adequately represented by the existing sentencing guidelines. Specifically, we agree with the Report's conclusion that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender dangerousness. The current guidelines can at times under-represent and at times over-represent the seriousness of an offender's conduct and the danger an offender possesses.

United States Department of Justice, *Letter to the Honorable Patti B. Saris, Chair of the United States Sentencing Commission*, 1 (March 5, 2013), available at http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf (last visited Aug. 7, 2013) (hereinafter "DOJ Letter"). To comport with changes in technology and the means by which child pornography is produced and distributed, the DOJ recommends that advisory sentencing ranges should be calculated based on:

> how an offender obtains child pornography; the volume and type of child pornography an offender collects; how long an offender has been collecting child pornography; the attention and care an offender gives to his collection; how an offenders uses his collection once obtained; how an offender protects himself and his

collection from detection; and whether an offender creates, facilitates, or participates in a community centered on child exploitation.

*Id.* at 2.

The Commission's Report and the DOJ's response further strengthen this Court's belief that the child pornography guidelines do not deserve the same weight inherent in other guidelines because they did not result from careful study based in empirical analysis and national experience, but are the result of congressional mandates. *See, e.g.*, *United States v. Huffstatler*, 571 F.3d 620, 622–23 (7th Cir. 2009) (collecting district court cases relying on this rationale); *see also* United States Sentencing Commission, *The History of the Child Pornography Guidelines* (2009), available at http://www.ussc.gov/Research_and_Statistics/Research_Projects/Sex_Offenses/20091030_History_Child_Pornography_Guidelines.pdf.

According to the United States Sentencing Commission, in 2010, in cases in which U.S.S.G. § 2G2.2 enhancements were applicable, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of cases. *Report to Congress: Federal Child Pornography Offenses* at 209. The enhancement for possession of material portraying violence or sadomasochistic conduct (§ 2G2.2(b)(4)) applied in 74% of all § 2G2.2 cases. *Id.*[2]

---

[2]The frequency of the application of these enhancements does not necessarily render them flawed and unworthy of this Court's consideration, but a consequence of such frequent application of the enhancements is that even ordinary first-time offenders often qualify for guideline sentences that approach the statutory maximum based solely on sentencing enhancements that are inherent in the crime of conviction. This, in turn, can lead to less of a distinction between the sentences of first-time offenders and those who are more dangerous offenders, who, for example, distribute pornography for pecuniary gain. This undercuts the directive in § 3553(a) to consider the nature and circumstances of the offense and the history and characteristics of the defendant.

The five enhancements in this case (the computer enhancement, the number of images enhancement, the enhancement for images of prepubescent minors, the enhancement for distribution other than distribution described in subdivisions (A) through (E) pursuant to U.S.S.G. §2G2.2(b)(3)(F), and the enhancement for sadistic or masochistic images) lead to an inaccurate indication of the severity of the Defendant's offense and do not serve to promote the goals of punishment in this case.[3]

> Innovations in digital cameras and videography as well as in computers and Internet-related technology, such as peer-to-peer ("P2P") file-sharing programs have been used by offenders in the production, mass distribution (both commercial and non-commercial distribution), and acquisition of child pornography. These technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre that previously was not as widely circulated as it is today. As a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography at little or no financial cost and often in an anonymous, indiscriminate manner.
>
> Several provisions in the current sentencing guidelines for non-production offenses—in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images—originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

*Id.* at 312–313 (footnotes omitted).

The Sentencing Commission has previously criticized the two-level computer enhancement, finding that the enhancement did not distinguish between serious commercial

---

[3]Accounting for the Defendant's base offense level of 18, *see* U.S.S.G. § 2G2.2(a)(1), three level credit for acceptance of responsibility, and criminal history category II, these five enhancements result in an advisory guideline range of 108 to 135 months imprisonment as opposed to a range of 21 to 27 months of imprisonment.

12

distributors of online pornography and run-of-the-mill users. *See* United States Sentencing Commission*, Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, 25–30 (1996), available at http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/199606_RtC_SCAC.PDF. The Commission has reiterated this same concern in its most recent report. *See Report to Congress: Federal Child Pornography Offenses* at 323–24 ("the 2-level enhancement for use of a computer . . . applies in virtually every case and, thus, fails to differentiate among offenders with respect to their involvement in [online child pornography] communities"). "Because the vast majority of child pornography offenses now involve the use of a computer," the DOJ recommends that the computer enhancement "be eliminated and replaced by others, . . . which better distinguish between different classes of offenders." *DOJ Letter* at 4. Although a computer can provide an effective means to transport material quickly in interstate commerce, it is distributors, traffickers, and those desiring to entice children to engage in sexual activity who most exploit the technology and increase the market for child pornography.

For this Defendant, the computer enhancement does not correspond to an elevated seriousness of his offense or to any of the purposes of sentencing. There is no indication that he intended to sell or distribute images to others for profit or otherwise, and empirical data does not show that using a computer as a means to possess and view pornography is a more serious or culpable offense than viewing the same images if they had been received by another medium, such as through the mail. *Cf. United States v. Hanson*, 561 F. Supp. 2d 1004, 1010–11 (E.D. Wis. 2008) (stating that this enhancement is logically flawed because on-line pornography

13

generally comes from the same pool of images found in other formats). Accordingly, a two-level enhancement to the Defendant's base offense level for the use of a computer yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Likewise, the enhancement for the number of images does not further the purposes of sentencing in this Defendant's case. While the DOJ maintains that the number of images enhancement should continue to be applied, it recognizes that "in light of the technology-facilitated ease of obtaining larger child pornography collections, the numeric thresholds should be substantially increased for each offense level, so as to better distinguish between occasional and habitual collectors of child pornography." *DOJ Letter* at 4.[4] *See also United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010) ("offenders readily obtain the necessary number of images with minimal effort"); *United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009) ("the number and type of images received is frequently accidental"). Although the Guidelines provide for a five-level enhancement for more than 600 images, a four-level enhancement for 300 to 600 images, a three-level enhancement for 150 to 300 images, or a two-level enhancement for 10 to 150 images, these distinctions are not linked to any empirical data pertaining to sentencing and the purposes of punishment, and in this case they do not provide an accurate indication of culpability. Under the Guidelines, each video corresponds to 75 images for purposes of applying the enhancement—resulting in a finding that the Defendant possessed more than 6,075 images. This additional five-point enhancement increases the magnitude of the Defendant's offense without a showing of corresponding culpability.

---

[4] The maximum five-level enhancement under § 2G2.2(b)(7)(D) for possessing 600 or more images applied to 67.6% of cases in 2010. *Report to Congress: Federal Child Pornography Offenses* at 209.

Accordingly, a five-level enhancement to the Defendant's base offense level for the number of images yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Under the facts of this case, the Court also finds the enhancement for possession of an image of a prepubescent minor or minor who had not reached the age of twelve does not further the purposes of punishment. In 2010 non-production cases, 96.3% of offenders possessed child pornography depicting prepubescent minors or minors under the age of 12. *Report to Congress: Federal Child Pornography Offenses* at 140–41. As other courts have noted, images of very young children are sadly "typical of this crime," and do not indicate increased culpability for those receiving such images. *Hanson*, 561 F. Supp. 2d at 1009; *Burns*, 2009 WL 3617448, at *13. There is no evidence that the Defendant specifically sought out prepubescent minors. Consequently, the Court finds that applying this enhancement would not appropriately measure the Defendant's culpability under the facts of this case.

The enhancement for possession of sado-masochistic images also yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes. In 2010, U.S.S.G. § 2G2.2(b)(4) applied in 74.2% of all cases. *Report to Congress: Federal Child Pornography Offenses* at 316. Although originally intended to provide additional proportional punishment for aggravating conduct, this enhancement now routinely applies to the vast majority of offenders. Moreover, there is no evidence that the Defendant sought out sadomasochistic images. Accordingly, a four-level enhancement to the Defendant's base offense level for possessing sadomasochistic images yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

The Court also finds that the enhancement for distribution other than distribution described in subdivisions (A) through (E) pursuant to U.S.S.G. §2G2.2(b)(3)(F) does not further

the purposes of punishment. Subdivisions (A) through (E) describe distribution for pecuniary gain; for the receipt, or expectation of receipt, of a thing of value; for distribution to a minor; and for distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct or other illegal activity. Subdivision (F), applied in this case, is a catch-all provision covering any other distribution not previously covered. The Defendant argues that this enhancement makes simple possession evolve into distribution, regardless of the intent of the Defendant, due to the nature of peer-to-peer file sharing programs. Further, the Defendant argues that there is no evidence showing that he willingly shared child pornography with anyone or that he conditioned any such sharing on a promise to receive additional child pornography in return. However, the Defendant argues that there is evidence showing that the vast majority of child pornography he downloaded was either deleted or saved on his hard drive or his external hard drive and was removed from his shared folder. The Defendant argues that only two files found on his computer linked to Limewire or Frostwire, that the rest of the files did not link to peer-to-peer file sharing programs, and that there is no evidence that anyone, other than Detective Vogely, downloaded files from the Defendant. The Defendant is correct. There is no evidence in the record that the Defendant made arrangements to share or transfer files with others or that he would share files in a quid pro quo exchange. Accordingly, the two-level enhancement for distribution other than distribution described in subdivisions (A) through (E) pursuant to U.S.S.G. §2G2.2(b)(3)(F) yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

For these reasons, the Court will not give deference to the increase in the advisory guideline sentence that is brought about by these specific offense characteristics.

The Defendant has asked the Court to sentence him below the advisory guideline range of 108 to 135 months, and instead impose a sentence of 15 months. As argued in his Sealed Sentencing Memorandum, the Defendant contends that the nature and characteristics of the offense and the history and characteristics of the Defendant, including various health issues and past experiences, justify a variance from the sentencing guideline range. The Government argues that the advisory guideline range is reasonable and that the government leaves the appropriate sentence to be imposed upon the consideration of § 3553(a) facts to the sound discretion of the Court.

In consideration of the nature and circumstances of the offense, the Court finds that the Defendant did not seek pecuniary gain or exchange money in his acquisition of images; thus, he did not contribute to any commercial market for child pornography. Nor was the Defendant motivated to distribute images, but instead collected them for his personal use. In addition, the Defendant was not involved in the production of child pornography but rather was a run-of-the-mill user who viewed the images privately.

In consideration of the history and characteristics of the Defendant, the Court finds that the Defendant has never had improper contact with children. Without diminishing the seriousness of his offense conduct, the Court notes that the Defendant has never been involved in the creation or production of child pornography, nor has he attempted to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct or any other illegal activity. Although he possessed child pornography, he appears to have a sexual interest in adult women as demonstrated by the fact that he was once married, has had multiple girlfriends, and is presently in a relationship with an adult. There is evidence that the Defendant had viewed and possessed

child pornography, but not that he is a pedophile or predator. There are no reported problems of inappropriate sexual conduct between the Defendant and his children, and the Defendant has complied with the conditions of his pretrial release. However, the Court is unpersuaded that the health issues raised by the Defendant would necessarily place him at high risk in a prison setting. Due to the nature of his offense, he will have many conditions as part of his supervised release, including registering as a sex offender and monitoring of his computer, which will follow him for many years, further reducing the risk of recidivism.

The Court finds that the enhancements do not fully distinguish the relative level of culpability between the Defendant and others who engage in more serious conduct, such as the production and commercial distribution of child pornography. Notwithstanding the amount of pornography in this case, which is quickly and easily acquired with only a few keystrokes and drives the guideline range in this case, the Defendant's offense conduct appears to be limited to mere viewership without any intent to share or distribute the images. Prison is a great disincentive for illegal conduct, and a sentence of 54 months is not insignificant.

The receipt, distribution, and possession of child pornography is a form of sexual exploitation of the most vulnerable members of our society, and thus is a serious offense. Fifty-four months of imprisonment is also a serious sentence, and it is sufficient to promote respect for the law and to provide just punishment, deterrence, protection for the public, and rehabilitation. A term of 108 months of imprisonment would no better serve these goals. The Court finds that 54 months of imprisonment, combined with supervised release, is sufficient time for the Defendant to address those issues that caused him to disregard the well being of those who have been harmed by his actions. The term of supervised release will provide additional time to

monitor the Defendant's actions with respect to the possession of pornographic matter. Finally, this Court's review of similar cases across the country and in this Circuit suggests that a term of 54 months would not create unwarranted sentencing disparities among defendants.

## CONCLUSION

For the foregoing reasons, the Defendant's objections to the PSR are OVERRULED. The Court finds that a sentence of 54 months is sufficient to meet the purposes of sentencing in this case and is consistent with the statute. The Sentencing set for October 14, 2014, is CONFIRMED.

SO ORDERED on October 9, 2014.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT